| | |
|---|---|
| **SEAN HARDEN, JAMES RIDLEY, DAVID RIDLEY, and MAURICE LAMB, on behalf of themselves and all similarly situated individuals** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **GILLMANN SERVICES, INC., VARNEY INC., MECHANICAL & ELECTRICAL, CONTRACTORS, LLC f/k/a M&E CONTRACTORS, LLC, M&E CONTRACTORS, INC., and IES COMMERCIAL, INC.,** <br><br><br> **Defendants.** | **CIVIL ACTION NO.   3:17cv091** |

## COLLECTIVE ACTION COMPLAINT

1.      Plaintiffs Sean Harden, James Ridley, David Ridley, and Maurice Lamb (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, bring this collective action for violations of the Fair Labor Standards Act (FLSA) against Gillmann Services, Inc. ("Gillmann"), Varney, Inc. ("Varney"), IES Commercial, Inc., ("IES"), Mechanical and Electrical Contractors, LLC f/k/a M&E Contractors, LLC ("M&E LLC") and/or M & E Contractors, Inc. ("M&E Inc.") (collectively "Defendants").  (M&E LLC and M&E Inc. are collectively referred to herein as "M&E").

2.      Gillmann is a temporary staffing agency.  Varney, IES, and M&E are clients of Gillmann who managed or operated construction projects for which Gillmann provided

temporary labor. (Varney, IES and M&E are collectively referred to as "Contractor Defendants").

3.     Plaintiffs, were joint employees of Gillmann and one or more of the Contractor Defendants, and were not paid a time and a half overtime premium on all wages for hours worked over forty in each workweek.

4.     At all times alleged in this Complaint, Defendants engaged in uniform pay practices and policies that deprived Plaintiffs and similarly situated individuals of lawful wages in willful violation of the FLSA.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1337 (commerce), 28 U.S.C. § 1331 (federal question), and 29 U.S.C. § 216(b) (FLSA).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this district.

7.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Gillmann Services, Inc. resides in this district and all defendants are residents of Virginia pursuant to 28 U.S.C. § 1391(c)(2) and (d).

## PARTIES

8.     Plaintiff Sean Harden ("Harden") is a resident of Victoria, Virginia. Harden was jointly employed by Gillmann (at all relevant times), and at various times by Varney, M&E, and IES, as an "employee" as defined in 29 U.S.C. § 203(e). Harden and similarly situated employees worked for these defendants at various worksites throughout Virginia, including a jobsite known as the Dominion Data Center located in Henrico County, Virginia at which Harden worked on behalf of IES.

9.      Plaintiff James Ridley ("J. Ridley") is a resident of the Commonwealth of Virginia, and at all relevant times was jointly employed by Gillmann and Varney as an "employee" as defined in 29 U.S.C. § 203(e).

10.     Plaintiff David Ridley ("D. Ridley") is a resident of the Commonwealth of Virginia and at all relevant times was jointly employed by Gillmann and Varney as an "employee" as defined in 29 U.S.C. § 203(e).

11.     Plaintiff Maurice Lamb ("Lamb") is a resident of the Commonwealth of Virginia and at all relevant times was jointly employed by Gillmann and Varney as an "employee" as defined in 29 U.S.C. § 203(e).

12.     Defendant Gillmann is a Virginia corporation with its headquarters at 11848 Rock Landing Drive, Suite 102, Newport News, Virginia 23606.  Gillmann is a labor staffing company claiming to specialize in providing skilled trades employees to commercial, industrial, mining, manufacturing, and marine construction companies.  Gillmann provides labor staffing in Virginia, West Virginia, Tennessee, Pennsylvania, and Arizona.  Gillmann is an "enterprise engaged in commerce," as defined in 29 U.S.C. § 203(s).  Gillmann conducts substantial business and provides staffing services for its contractor clients in the cities and counties within the Richmond Division, including to the worksites in Henrico county known as the Dominion Data Center.

13.     Varney is an electrical and plumbing contractor whose headquarters is at 1701 Shenandoah Avenue, N.W., Roanoke, Virginia 24017. Varney is an "enterprise engaged in commerce," as defined in 29 U.S.C. § 203(s).  Varney is one of the Contractor Defendants in that it contracted with Gillmann to provide skilled labor for one or more of its contractor jobs. Varney was a joint employer with Gillmann of Harden, J. Ridley, D. Ridley, and Lamb, and all

putative plaintiffs who were placed on Varney contract jobs through Gillmann within the relevant time period. Varney is a Virginia corporation licensed to do business in Virginia and West Virginia.

14.     IES is a Delaware corporation doing business in Virginia.  IES is a subsidiary of IES Holdings, Inc., whose headquarters is in Houston, Texas. IES is an "enterprise engaged in commerce," as defined in 29 U.S.C. § 203.  IES is one of the Contractor Defendants in that it contracted with Gillmann to provide skilled labor for one or more of its contractor jobs.  IES was a joint employer with Gillmann of Harden and all putative plaintiffs who were placed on IES contract jobs through Gillmann within the relevant time period, including a contract job in Henrico county known as the Dominion Data Center.

15.     M&E LLC is an electrical and plumbing contractor whose headquarters is at 9001A Hermitage Road, Richmond, Virginia 23228-2808.  M&E LLC is an "enterprise engaged in commerce," as defined in 29 U.S.C. § 203.  M&E LLC is one of the Contractor Defendants in that it contracted with Gillmann to provide skilled labor for one or more of its contractor jobs. M&E LLC was a joint employer with Gillmann of Harden and all putative plaintiffs who were placed on M&E LLC contract jobs through Gillmann within the relevant time period.  Upon information and belief M&E LLC and M&E Inc. (collectively "M&E") are integrated entities which jointly employed Harden and similarly situated employees placed through Gillmann.

16.     M&E Inc. is an electrical and plumbing contractor whose headquarters is at 9001A Hermitage Road, Richmond, Virginia 23228-2808.  M&E Inc. is an "enterprise engaged in commerce," as defined in 29 U.S.C. § 203.  M&E Inc. is one of the Contractor Defendants in that it contracted with Gillmann to provide skilled labor for one or more of its contractor jobs. M&E Inc. was a joint employer with Gillmann of Harden and all putative plaintiffs who were

placed on M&E LLC contract jobs through Gillmann within the relevant time period. Upon information and belief M&E Inc. and M&E LLC (collectively "M&E") are integrated entities which jointly employed Harden and similarly situated employees placed through Gillmann.

17. By information and belief, at all relevant times Defendants had an annual dollar volume of sales or business of at least $500,000.

18. At all relevant times, Plaintiffs and similarly situated individuals were engaged in commerce or in the production of goods for commerce.

19. At all relevant times, Plaintiffs and similarly situated individuals were non-exempt, hourly employees, and not employed in any bona fide executive, administrative or professional capacity.

20. At all relevant times, Gillmann and the individual Contractor Defendants were joint "employers," within the meaning of 29 U.S.C. § 203(d), of each Plaintiff and putative plaintiff that Gillmann provided to such Contractor Defendant to perform labor.

21. At all relevant times, Gillmann and the individual Contractor Defendants "employed," within the meaning of 29 U.S.C. §203(g), those Plaintiffs and similarly situated putative plaintiffs who were assigned to such individual Contractor Defendant to perform labor.

## FACTUAL ALLEGATIONS

22. Defendant Gillmann is a temporary staffing agency, providing workers to construction contractors at various locations and projects on an as-needed basis.

23. During the relevant time period, Gillmann hired Plaintiffs and similarly situated individuals to perform skilled and unskilled work at construction sites operated by the Contractor Defendants, and other contractor clients of Gillmann unknown to Plaintiffs.

24. According to Gillmann's website, http://gillmannservices.com/, it claims to

provide labor staffing to its contractor clients in Virginia, West Virginia, Tennessee, Pennsylvania, and Arizona.

25.     Upon information and belief, Gillmann provides labor staffing to its contractor clients in Virginia, West Virginia, Tennessee, Pennsylvania, and Arizona.

26.     During the relevant timeframe of this lawsuit, Gillmann employed each of the Plaintiffs, and assigned each of them to work for one or more of the Contractor Defendants.

27.     On information and belief, Gillmann had control over the method and manner by which Plaintiffs were paid, and the manner and amount in which taxes were withheld from Plaintiffs' pay, if any.

28.     While employing the Plaintiffs and similarly situated individuals, Gillmann engaged in an unlawful method of paying its construction labor employees in order to: (a) avoid paying its full tax obligation to state and federal taxing authorities; and (b) avoid paying employees the full overtime premium owed under the FLSA.

29.     Specifically, Gillmann offered an hourly rate of pay to each Plaintiff, but informed Plaintiffs that their hourly rate would be divided or "split" up and paid in two parts: a taxable portion, and a non-taxable portion.

30.     The taxable portion of Plaintiffs' wages appeared on paystubs as an hourly rate that was a fraction of the agree-upon hourly rate between Gillmann and each individual employee.

31.     The untaxed portion of Plaintiffs pay appeared on Gillman's paystubs as "per diem," which tricked Gillman's pay system into allocating the "per diem" amount as non-taxable income.  The so-called "per diem" was not a true per diem since the per diem amount listed on the paystubs correlated solely to the number of hours worked by Plaintiff per week.

32.     The "per diem" amount was supposed to compensate Plaintiffs for the balance of his/her agreed-on hourly rate, only a fraction of which was paid by Gillman as taxable wages.

33.     In fact, the "per diem" was a ruse for Gillmann to avoid paying its payroll taxes required by law.

34.     Gillmann is required by 26 USC § 3111 of the Federal Insurance Contributions Act (FICA) to pay payroll taxes as an employer.  Gillmann intentionally violated 26 USC § 3111.

35.     Gillmann is also required by FICA, at 26 USC § 3102, to withhold payroll taxes on behalf of all its employees.  Gillmann intentionally violated 26 USC § 3102.

36.     Gillman's unlawful "per diem" also was intended to, and did, deprive its employees of their required overtime premium for those weeks in which they worked more than 40 hours.

37.     Each of the Plaintiffs worked more than 40 hours in some workweeks.

38.     Gillmann represented to Plaintiffs and others similarly situated, that it was in the employee's best interest to receive payment in the manner that Gillmann carried out.

39.     Gillmann represented to Plaintiffs that they could receive per diem money without paying any taxes on such portion.

40.     Plaintiffs were not in a position of bargaining power to challenge or refuse the method and manner which Gillmann paid them.

41.     Gillmann controlled the method and manner by which Plaintiffs were paid.

42.     Gillmann willfully represented to its employees that its "split" pay scheme was beneficial to its employees.

43.     Gillmann did not inform employees that they would not receive their full overtime

premium as required by the FLSA.

44. Gillmann's pay scheme deprived Plaintiffs and similarly situated employees from understanding that their FLSA rights were being violated.

45. Gillmann's paystubs issued to Plaintiffs reflected overtime premium at time-and-a-half, but only for the "taxable" portion of the wages paid by Gillmann.

46. Gillmann's paystubs did not reflect an itemized accounting of the "per diem" portion that it paid to its employees.

47. Only a lump sum amount was reflected in the "per diem" allocation for each paystub Gillmann issued to its employees.

48. Gillmann's intentional misrepresentations, combined with the lack of transparency of its "per diem" accounting, served to prevent Plaintiffs from identifying Gillmann's overtime violations.

49. Equitable tolling is appropriate in this case given Gillmann's intentional misrepresentations to Plaintiffs.

### Defendants' Pay Scheme Deprived Plaintiffs of Full Overtime Premium (Violation Reflected in Gillmann's Pay Records)

50. Gillmann paid an overtime premium to Plaintiffs and those similarly situated only on the portion of the taxable wages reflected on the Gillmann-issued paystubs.

51. Gillmann did not pay any overtime premium to Plaintiffs on the portion of wages for which its paystubs allocated as "per diem."

52. Gillmann agreed to pay Lamb $21.50 per hour to work as an electrician for Varney.

53. Under Gillmann's pay scheme, however, Lamb's paystubs reflect that his rate of pay was $10 per hour as taxable income, and $11.50 per hour as a "per diem" not subject to any

employer or employee tax.

54.      In Lamb's case, when he worked more than 40 hours in a week, Gillmann typically paid an overtime premium only on the taxable wage ($10/hour * 1.5 overtime premium = $15/hour), but no overtime premium for his so-called "per diem" hours at $11.50/hour, for a total overtime rate of $26.50 paid to Lamb for his hours worked over 40 per week.  The overtime premium Lamb is entitled to by law, but which he did not receive, is $32.25 per hour ($21.50 * 1.5 = $32.25).

55.      In addition to the reduced overtime premium Lamb was paid under Gillmann's pay scheme, some of Lamb's overtime hours were paid without any overtime premium at all. For example, for the week ending March 15, 2015, Lamb's paystub reflects 42 hours worked with no overtime premium paid at all for his two overtime hours.

56.      Gillmann agreed to pay Harden $20 per hour to work as an electrician at various times for Varney, M&E, and IES.

57.      Under Gillmann's pay scheme, however, Harden's paystubs reflect that he was paid $10 per hour as taxable income, and $10 per hour as a "per diem" not subject to any employer or employee tax.

58.      In the weeks when Harden worked more than 40 hours in a week, Gillmann paid an overtime premium only on the taxable wage ($10/hour * 1.5 overtime premium = $15/hour), but no overtime premium for his so-called "per diem" hours at $10/hour, for a total overtime rate of $25 paid to Harden for his hours worked over 40 per week.  The overtime premium Harden is entitled to by law, but which he did not receive, is $30 per hour ($20 * 1.5 = $30).

59.      In addition to the reduced overtime premium Harden was paid under Gillmann's pay scheme, Gillmann also unlawfully deducted money from Harden's paychecks.

60.     Gillmann asserted that said deductions were taken from Harden's pay to reimburse Gillmann for the cost of hotel stays.

61.     Harden was required to stay at a hotel during several work weeks because the job site that Gillmann assigned him to was located a great distance from Harden's home.

62.     It was improper for Gillmann to deduct hotel costs from Harden's pay because such deductions deprived Harden of his full wages owed under the FLSA.

63.     In other words, Gillmann was paying Harden a fraudulent "per diem," and then was deducting hotel costs for which it should have been paying Harden as a "per diem."

64.     In the pay period ending February 12, 2014, Gillmann improperly deducted 48 hours from Harden's pay.  Harden worked 48.5 hours that pay period, but received only $7.50 in gross pay for that period, depriving Harden of his full wages of $20 per hour, and failing to pay at least a minimum wage or overtime in violation of the FLSA.

65.     Gillmann agreed to pay J. Ridley $25 per hour to work as an electrician for Varney.

66.     Under Gillmann's pay scheme, however, J. Ridley's paystubs reflect that he was paid $12 per hour as taxable income, and $13 per hour as a "per diem" not subject to any employer or employee tax.

67.     In the weeks when J. Ridley worked more than 40 hours in a week, Gillmann paid an overtime premium only on the taxable wage ($12/hour * 1.5 overtime premium = $18/hour), but no overtime premium for his so-called "per diem" hours at $13/hour, for a total overtime rate of $31 paid to J. Ridley for his hours worked over 40 per week.  The overtime premium J. Ridley is entitled to by law, but which he did not receive, is $37.50 per hour ($25 * 1.5 = $37.50).

68.     Gillmann agreed to pay D. Ridley $25 per hour to work as an electrician at

various times for Varney.

69.     Under Gillmann's pay scheme, however, D. Ridley's paystubs reflect that he was paid $12 per hour as taxable income, and $13 per hour as a "per diem" not subject to any employer or employee tax.

70.     In the weeks when D. Ridley worked more than 40 hours in a week, Gillmann paid an overtime premium only on the taxable wage ($12/hour * 1.5 overtime premium = $18/hour), but no overtime premium for his so-called "per diem" hours at $13/hour, for a total overtime rate of $31 paid to D. Ridley for his hours worked over 40 per week.  The overtime premium D. Ridley is entitled to by law, but which he did not receive, is $37.50 per hour ($25 * 1.5 = $37.50).

71.     Defendants' failure to pay Plaintiffs and similarly situated employees their full minimum wage and/or overtime premium is reflected in Gillmann's pay records, including the paystubs issued to Plaintiffs.

72.     Moreover, Gillmann's unlawful deductions from Harden's pay checks, including "hotel deductions," which caused to deprive Harden and similarly situated Plaintiffs of their legally required overtime premium and/or minimum wage under the FLSA, are also reflected in Gillmann's pay records.

### Defendants Failed to Compensate Plaintiffs for Travel Away from Home Community ("Off the Clock" Violation – Not Reflected in Gillmann's Pay Records)

73.     On information and belief, Gillmann often intentionally assigned employees to worksites far away from the employee's home in order to give the impression (presumably in the event of an IRS audit) that the so-called "per diem" (as reflected in Gillmann's pay scheme) was a legitimate travel "per diem."

74.     Lamb lived in West Virginia and worked away from his home at worksites for Gillmann and Varney in Virginia.

75.     Gillmann and Varney conduct business in both Virginia and West Virginia.

76.     Lamb's assignment from Gillmann and Varney was such a distance from his home community that he could not travel from home to work and back following a normal workday.

77.     At all relevant times, Lamb lived in Sumerco, West Virginia, and was required to travel approximately 332 miles (round trip 664 miles) to and from Varney's worksite in Manassas, VA.

78.     Lamb traveled on Sundays, prior to the commencement of work on Mondays, and did not return home until Friday or Saturday following a full week of working for Gillmann and Varney at their jobsite in Virginia.

79.     Part of Gillmann's agreement with Lamb was to compensate him for his travel time to and from his home in West Virginia and Varney's worksite far away from Lamb's home area each week, both before the start and after the end of his workweek.

80.     29 CFR § 785.39 requires employers to compensate employees for travel away from their home community.

81.     Lamb spent approximately 11-12 hours each week, which was compensable travel time under the law, for which he did not receive remuneration.

82.     Lamb was aware of, and specifically requested to work jobs that Gillmann staffed in West Virginia, but Gillmann refused.

83.     On information and belief, Gillmann had work available for Lamb that was within West Virginia, for which he was qualified, but Gillmann refused to assign Lamb to such jobs.

84. Upon information and belief, Gillmann required Lamb to work for Varney in Virginia, and refused him work in West Virginia in order to create the false appearance the "per diem" was somehow a legitimate non-taxable payment to Lamb.

85. At all relevant times, Plaintiff Sean Harden lived in Victoria, Virginia in Lunenburg County.

86. During part of Harden's employment with Defendants, Gillmann and M&E required Harden to work at one of M&E's worksites at James Madison University (JMU) in Harrisonburg, Virginia.

87. Harden's assignment at M&E's worksite required Harden to travel away from his home community by approximately 155 miles (310 miles round trip).

88. Harden typically traveled on Sundays, prior to the commencement of work on Mondays, and did not return home until Friday or Saturday following a full week of working for Gillmann and M&E at their jobsite at JMU.

89. Such work away from Harden's home required him to travel a minimum of two hours and 40 minutes each way, or five and one-third hour round trip.

90. Harden was not compensated for such time which required him to spend the workweek away from his home.

91. Defendants' failure to compensate Plaintiffs and similarly situated employees for their time travelling away from their home community for the benefit of Defendants is <u>not</u> reflected in Gillmann's pay records. Such time is compensable "off the clock" time pursuant to law.

### "Joint Employer" Allegations

92. Gillmann, as a temporary staffing agency for its clients including each individual

Contractor Defendant, shared, agreed to allocate responsibility for, and/or otherwise codetermined the key terms and conditions of Plaintiffs' and similarly situated employees' work with respect to each employee who was assigned to work for each such Contractor Defendant.

93.     The individual Contractor Defendants each directed, controlled, or supervised the day-to-day work of those Plaintiffs or similarly situated individuals assigned by Gillmann to such Contractor Defendant.

94.     On information and belief, Gillmann shared with its Contractor Defendant clients the ability to direct, control, or supervise the work of the Plaintiffs or similarly situated employees that it assigned to each such Contractor Defendant.

95.     Both the Contractor Defendants and Gillmann had the power to hire, fire, or modify the terms or conditions of the employment of Plaintiffs and similarly situated employees who were assigned to work for each such Contractor Defendant.

96.     On information and belief, Gillmann and each Contractor Defendant entered into a contract by which Gillmann agreed to provide each Contractor Defendant with skilled laborers, and in return each Contractor Defendant paid money to Gillmann for the same.  The contractual relationship between Gillmann and its clients, including the Contractor Defendants, indicates an association that is of sufficient duration to indicated joint employment status over Plaintiffs.

97.     On information and belief, Gillmann and the Contractor Defendants agreed that payroll, workers' compensation insurance, and other payroll functions will be handled by Gillmann.

98.     The Contractor Defendants provided materials and equipment to Plaintiffs to perform the work for the benefit of such Contractor Defendant.

99.     The Contractor Defendants knew or should have known about the pay scheme by

which Plaintiffs and similarly situated individuals were compensated.

## FLSA Collective Action Allegations

### (FLSA Collective Applicable to All Gillmann Employees)

100.     Plaintiffs bring this action on behalf of themselves and other similarly situated individuals who were employed by Gillmann to recover unpaid minimum wage or overtime compensation pursuant to the FLSA.

101.     The FLSA "collective" or "class" of similarly situated individuals is composed of all current and former employees of Defendants who were systematically denied minimum wage or overtime pay by Defendants' pay scheme which artificially classified certain pay as a per diem.

102.     At all relevant times, Gillmann and its clients (including the Contractor Defendants) were joint employers of those employees who were assigned by Gillmann to work for each such Contractor Defendant.

103.     At all relevant times, Gillmann had a policy and practice of paying an overtime premium on only a portion of its employees' hourly wages.

104.     Gillmann and its Contractor Defendants employed skilled laborers, including Plaintiffs and those similarly situated, on construction related jobsites where it is common practice in such industry, and it was common practice by Defendants, to require its employees to work more than 40 hours per week at least one week per month, if not more.

105.     On information and belief, there are numerous other past and present non-exempt individuals who are similarly situated in that they worked more than forty (40) hours in a workweek for Defendants and were paid an overtime premium based upon only a portion of their hourly rate, and/or were deprived of their minimum or overtime wages because of Gillmann's

unlawful payroll deductions.

106.    Plaintiffs and similarly situated individuals who regularly worked more than forty (40) hours in one or more workweeks did not receive their full overtime premium as required by law as a direct result of Gillmann's unlawful payroll scheme as set forth herein.

107.    Defendants have shown a reckless disregard for the FLSA's requirements.

108.    Defendants have an obligation to make proper inquiry into their FLSA compliance obligations, they have failed to do so, or, having inquired, they ignored or willfully attempted to avoid their legal obligations.

109.    Defendants have not acted in good faith with respect to the failure to pay overtime compensation.  Defendants had no legitimate reason to believe their actions and omissions were not a violation of the FLSA, thus entitling Plaintiffs and similarly situated individuals to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime.

110.    Plaintiffs and similarly situated individuals were subject to a common plan or policy that deprived them of overtime wages by limiting their overtime compensation to less than one and one-half times their regular hourly rate.

111.    On information and belief, Defendants' pay policies described above were implemented across all projects for which Gillmann provided staffing service in all states in Which Gillmann conducts business, including Virginia, West Virginia, Tennessee, Pennsylvania, and Arizona.

112.    The exact amount of hours worked by and wages owed to Plaintiffs and similarly situated individuals will be uncovered through discovery.

113.    Upon information and belief, Defendants are in possession of electronically stored information (ESI) concerning the time and pay data (reflecting the actual hours worked, amounts

paid, and amounts improperly deducted) for Plaintiffs and similarly situated current and former employees who worked for Defendants within the relevant time period.

114.    Upon information and belief, Defendants are in possession of employee data reflecting which of the individual Plaintiffs and individual putative collective or class members worked for which of the Contractor Defendant(s) or other of Gillmann's contractor clients.

115.    This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

116.    Plaintiffs seek to certify a collective action on behalf of all hourly employees of Gillmann who worked for Contractor Defendants, and other contractor clients of Gillmann, at construction projects during the relevant time who were not paid an overtime premium based upon their full hourly wages and/or were not paid a minimum wage.

**(FLSA "Travel Subclass" – Employees who Traveled Away from Home Community)**

117.    In additions to Gillmann's pay scheme which affected all employees, a subclass of Plaintiffs and similarly situated individuals, including Plaintiffs Sean Harden and Maurice Lamb, were required to travel away from their home community on one or more workweeks. ("Travel Subclass").

118.    Travel time away from the employee's home community is compensable pursuant to 29 CFR § 785.39.

119.    Gillmann had a policy and practice of not paying employees for travel time away from their home community.

120.    Defendants failed to compensate the Travel Subclass in accordance with the FLSA.

121.    Upon information and belief, Gillmann intentionally assigned members of the

Travel Subclass to work great distances from their home community in order to further its payroll scheme and give the appearance that its unlawful "per diem" was actually a legitimate per diem.

122. Gillmann is a common Defendant for the claims asserted by the Travel Subclass, and each Contractor Defendant who was a joint employer of an affected Plaintiff or similarly situated individual is also a Defendant with respect only to those employees who worked for such Contractor Defendant.

123. On information and belief, there are numerous past and present non-exempt individuals who are similarly situated to the Travel Subclass.

124. On information and belief, Gillmann has records which can identify the employees for whom it provided overnight lodging, and/or improperly deducted for the same.

## COUNT I - FLSA (29 U.S.C. § 201 *et seq.*)

125. Plaintiffs re-allege and incorporate the preceding allegations as if fully set forth herein.

126. Plaintiffs and similarly situated individuals were "employees" of Gillmann within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

127. As set forth above, each of the Plaintiffs and similarly situated individuals were also "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) of each Contractor Defendant to whom such Plaintiff was assigned by Gillmann.

128. Plaintiffs and similarly situated individuals were "non-exempt" employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 213.

129. Gillmann and its contractor clients, including the Contractor Defendants, were "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d), of those Plaintiffs specified

above and similarly situated individuals assigned to such Contractor Defendant through Gillmann.

130. The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty (40) hours in any one workweek. 29 U.S.C. § 207(a)(1).

131. There were workweeks in which Plaintiffs worked in excess of 40 hours per week during the relevant time period.

132. Defendants violated the FLSA by knowingly failing to pay Plaintiffs and similarly situated individuals one and one-half times their regular hourly rate for hours worked in excess of forty (40) hours in any one workweek.

133. Defendants further violated the FLSA by knowingly failing to pay Harden and similarly situated individuals a minimum wage.

134. Defendants' violations of the FLSA were willful.

135. Plaintiffs and similarly situated employees are entitled to equitable tolling to the earliest date that each such person was employed by Gillmann, or to the date on which Gillmann implemented the unlawful pay scheme complained of herein.

136. For their violations of the FLSA, Defendants are liable to Plaintiffs and similarly situated individuals for unpaid overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

137. No claim is asserted by any Plaintiff or putative Plaintiff against any Contractor Defendant entity to which such Plaintiff was not assigned to work by Gillmann.

138. Plaintiffs Harden, J. Ridley, D. Ridley, and Lamb each consent to opt-in to this

FLSA collective action, and their consent forms are attached as an exhibit hereto.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court enter judgment against the Defendants, in Plaintiffs' favor on all counts, and grant the following relief:

A.      Conditionally certify this action as a collective action on behalf of the FLSA collective class pursuant to 29 U.S.C. § 216(b);

B.      Grant the tolling of the applicable statute of limitations from the earliest date of Plaintiffs' or similarly situated employees' employment, or as of the beginning date on which Gillmann implemented its unlawful pay scheme complained of herein;

C.      Approve notice, as soon as possible, to those current and former employees of Gillmann who were placed on jobs with any of the Contractor Defendants or any of Gillmann's contractor clients, who were employed during the past three years, (or longer applying equitable tolling), of the existence of this FLSA action, the claims set forth herein, and to provide notice of each such individual's right to opt-in to this action pursuant to 29 U.S.C. § 216(b);

D.      Award Plaintiffs and all similarly situated current and former employees unpaid minimum and/or overtime wages, with pre-judgment interest, plus an equal amount as liquidated damages;

E.      Award Plaintiffs their reasonable attorneys' fees, expenses, and all recoverable costs of this suit;

F.      Award Plaintiffs post-judgment interest as allowed by law;

G.      Enter judgment declaring that the acts and practices complained of herein are violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.;

H.      Enter judgment that Defendants' violations of the FLSA were willful;

I.      Grant leave to amend to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court, and to add claims under applicable state and/or federal laws;

J.      Grant leave to amend to add additional other defendants who were provided labor by Gillmann and meet the definition of one or more putative Plaintiffs' "employer" pursuant to 29 U.S.C. § 203(d), by motion or any other method approved by the Court;

K.      Grant equitable tolling of Plaintiffs' claims; and

L.      Any additional relief the Court deems just.


Plaintiffs respectfully demand **TRIAL BY JURY**.


**Respectfully submitted,**
**Sean Harden, David Ridley, James Ridley, and**
**Maurice Lamb, on behalf of themselves and**
**others similarly situated Plaintiffs**


By: _____/s/_____
        Craig Juraj Curwood (VSB No. 43975)
        Philip Justus Dean (VSB No. 86335)
        Curwood Law Firm
        530 E. Main Street, Suite 710
        Richmond, VA 23219
        Telephone: (804) 788-0808
        Fax: (804) 767-6777
        pdean@curwoodlaw.com
        ccurwood@curwoodlaw.com
        Attorneys for Plaintiffs