# SETTLEMENT AGREEMENT AND GENERAL RELEASE

Gillmann Services, Inc. ("Gillmann" or "Company") and Sean Harden, James Ridley, David Ridley, Maurice Lamb, and Brian Harden, their heirs, executors, administrators, successors, and assigns ("Plaintiffs"), and both parties hereinafter the "Parties", hereby enter into this Settlement Agreement and General Release ("Agreement") and agree that:

1. **Reasons for Agreement.** Plaintiffs and Gillmann are parties to a matter pending before the United States District Court, Eastern District of Virginia, Richmond Division, Case No.: 3:17-cv-091. The Parties wish to resolve and settle the claims the Plaintiffs have made in that Complaint against Gillmann, Varney Inc., Mechanical & Electrical Contractors, LLC f/k/a M&E Contractors, LLC, M&E Contractors, Inc., and IES Commercial, Inc., (collectively "Defendants") and any other claims they have or may have against Gillmann.

Gillmann and other Defendants deny any liability or wrongdoing in connection with any claims by Plaintiffs, and any responsibility for any injury or loss alleged by Plaintiffs. This Agreement contains the resolution of all of Plaintiffs' allegations, is a compromise of disputed claims, and is entered into to avoid the expense, inconvenience, and disruption which could result from further processing of this matter; and

Therefore, in consideration of the covenants and agreements contained in this Agreement, the Parties state and agree as follows:

2. **Consideration.** In consideration for Plaintiffs' execution of this Agreement, and compliance with its terms, Gillmann agrees to pay the sum of Three Hundred Thousand and 00/100 Dollars ($300,000) to Plaintiffs and the Curwood Law Firm, which shall be allocated as set forth below, in consideration of Plaintiffs' release of any and all claims they may have against Gillmann, including all claims made in their Complaint against Gillmann, Varney Inc., Mechanical & Electrical Contractors, LLC f/k/a M&E Contractors, LLC, M&E Contractors, Inc., and IES Commercial, Inc. Two Hundred Thousand and 00/100 Dollars ($200,000) of that amount shall be paid within fourteen (14) days after the Court enters an order approving the terms of this Agreement, and the remaining One Hundred Thousand and 00/100 Dollars ($100,000) shall be paid within five (5) months or less of that initial payment. The initial $200,000 payment and final payment(s) shall be paid in pro rata amounts based on the percentage of the total $300,000 such payments represent, and shall be allocated as follows:

   a. Six Thousand and 00/100 Dollars ($6,000.00), less appropriate state and federal taxes, will be paid to Sean Harden, for alleged lost wages, and said amount to be reported by Gillmann on an IRS Form W-2;

   b. Forty Thousand, Seven Hundred Seventy-Two and 74/100 Dollars ($40,772.74) will be paid to Sean Harden, for alleged liquidated damages plus consideration for a general release to Gillmann, and said amount to be reported by Gillmann on an IRS Form 1099 with Box 3 "Other income" selected;

      c.      Two Thousand and 00/100 Dollars ($2,000.00), less appropriate state and federal taxes, will be paid to James Ridley, for alleged lost wages, and said amount to be reported by Gillmann on an IRS Form W-2;

      d.      Twenty-Four Thousand, Five Hundred Seventeen and 74/100 Dollars ($24,517.74) will be paid to James Ridley, for alleged liquidated damages plus consideration for a general release to Gillmann, and said amount to be reported by Gillmann on an IRS Form 1099 with Box 3 "Other income" selected;

      e.      Three Thousand and 00/100 Dollars ($3,000.00), less appropriate state and federal taxes, will be paid to David Ridley, for alleged lost wages, and said amount to be reported by Gillmann on an IRS Form W-2;

      f.      Twenty-Six Thousand, Three Hundred Forty-One and 74/100 Dollars ($26,341.74) will be paid to David Ridley, for alleged liquidated damages plus consideration for a general release to Gillmann, and said amount to be reported by Gillmann on an IRS Form 1099 with Box 3 "Other income" selected;

      g.      Thirteen Thousand and 00/100 Dollars ($13,000.00), less appropriate state and federal taxes, will be paid to Maurice Lamb, for alleged lost wages, and said amount to be reported by Gillmann on an IRS Form W-2;

      h.      Sixty-Three Thousand, Four Hundred One and 74/100 Dollars ($63,401.74) will be paid to Maurice Lamb, for alleged liquidated damages plus consideration for a general release to Gillmann, and said amount to be reported by Gillmann on an IRS Form 1099 with Box 3 "Other income" selected;

      i.      One Thousand and 00/100 Dollars ($1,000.00), less appropriate state and federal taxes, will be paid to Brian Harden, for alleged lost wages, and said amount to be reported by Gillmann on an IRS Form W-2;

      j.      Twenty-Two Thousand, Seven Hundred Nineteen and 74/100 Dollars ($22,719.74) will be paid to Brian Harden, for alleged liquidated damages plus consideration for a general release to Gillmann, and said amount to be reported by Gillmann on an IRS Form 1099 with Box 3 "Other income" selected;

      k.      Ninety-Seven Thousand Two Hundred Forty-Six and 30/100 Dollars ($97,246.30) will be paid to the "Curwood Law Firm" for attorney's fees and costs and said amount to be reported by Gillmann on an IRS Form 1099 with Box 14 "Gross proceeds paid to an attorney" selected.

      3.      **No Consideration Absent Execution of this Agreement.** Plaintiffs understand and agree that they would not receive the monies specified in paragraph 2 above except for their execution of this Agreement and the fulfillment of the promises contained herein.

4. **Breach of Paragraph 2.**  Gillmann understands and agrees that except for Gillmann's promise to pay the consideration set forth in paragraph 2, Plaintiffs would not be releasing their claims nor signing this Agreement.  Should Gillmann fail to make any of the payment amounts or meet any of the payment deadlines as set forth in paragraph 2, Gillmann shall be in breach of this Agreement.  In order for Gillmann to remedy any such breach, Gillmann shall pay all unpaid amounts set forth in paragraph 2 plus interest of 1% per month, compounding monthly, plus attorneys' fees incurred by Plaintiffs in collecting such unpaid amounts.  Plaintiffs' promises and obligations under this Agreement shall be waived as of the date that Gillmann first breaches this agreement, up until the time that Gillmann remedies any such breach. Plaintiffs may proceed with the underlying litigation against Defendants upon a finding of the Court of any such breach by Gillman.

5. **Dismissal of the Action.**  The Parties will seek the Court's approval of the settlement pursuant to Sections 7 and 16 of the Fair Labor Standards Act, 29 U.S.C. §§207, 216.  The Parties shall file a motion requesting the Court to dismiss the case against all defendants, with prejudice, with each Party to this Agreement bearing their own attorneys' fees and costs incurred in this Action, except as otherwise provided herein, with such dismissal to be effective immediately following final payment by Gillmann of the consideration set forth in paragraph 2.

6. **Complaint Release, General Release, Claims Not Released and Related Provisions.**

   a. **Release of Claims Asserted in Complaint**.  Plaintiffs knowingly and voluntarily release and forever discharge Gillmann, Varney Inc., Mechanical & Electrical Contractors, LLC f/k/a M&E Contractors, LLC, M&E Contractors, Inc., and IES Commercial, Inc., their parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, officers, attorneys, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (hereinafter collectively "Complaint Releasees"), of and from any and all claims contained in the Complaint in the matter pending before the United States District Court, Eastern District of Virginia, Richmond Division, Case No.: 3:17-cv-091.

   b. **Release of All Claims**.  Plaintiffs also knowingly and voluntarily release and forever discharge Gillmann, Gillman Services, Inc. ("Gillman"),its insurers, successors and assigns, and its current and former employees, officers, directors and attorneys, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (hereinafter collectively "General Releasees"), of and from any claims relating to Plaintiffs' employment with Gillmann, known and unknown, asserted or unasserted, which the Plaintiffs have or may have against General Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

   - Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Plaintiffs Retirement Income Security Act of 1974 ("ERISA") (as modified below);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Age Discrimination in Employment Act of 1967 ("ADEA");

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Fair Labor Standards Act, 29 U.S.C. Sect. 201 *et seq.*;

- The Family and Medical Leave Act, 29 U.S.C. Sect. 2601 *et seq*;

- The Equal Pay Act;

- The Genetic Information Nondiscrimination Act of 2008;

- The Internal Revenue Code and the Tax Code of Virginia;

- All Virginia employment-related laws, statutes and regulations, including, but not limited to, The Virginia Human Rights Act – Va. Code § 2.2-3900 et seq., any regulations thereunder, and any human rights law of any Virginia county or municipality; Virginia Statutory Provisions Regarding Retaliation/Discrimination for Filing a Workers' Compensation Claim – Va. Code § 65.2-308(A) and (B); The Virginia Equal Pay Act – Va. Code § 40.1-28.6; The Virginians with Disabilities Act – Va. Code § 51.5-1 et seq.; Virginia AIDS Testing Law – Va. Code Ann. §32.1-36.1; Virginia Wage Payment and Hour Laws – Va. Code § 40.1-28.8 et seq.; Virginia Occupational Safety and Health (VOSH) Law – Va. Code § 401-49.3 et seq.; Virginia Code § 8.01-40 regarding unauthorized use of name or picture of any person; Virginia Code § 40.1-27 regarding preventing employment by others of former Plaintiffs; Virginia Code § 40.1-28.7:2 regarding protection of crime victims' employment; and Virginia Code § 18.2-465.1 regarding protection of court witnesses' and jurors' employment;

- any claim for breach of oral or written contract arising under Virginia state and/or federal law;

- any claim of wrongful discharge in violation of public policy, and/or breach

of the covenant of good faith and fair dealing;

- any claim under any other federal, state or local law, rule, regulation, or ordinance;

- any claim under any public policy, contract, tort, or common law; or

- any claim on any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in any such claims.

c. **Claims Not Released.** Plaintiffs are not waiving any rights they may have to: (a) their own vested accrued employee benefits under Gillmann's health, welfare, or retirement benefit plans, if any; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes, if any; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement or pursue claims against the Complaint Releasees or General Releasees for breach of this Agreement; and/or (e) challenge the validity of this Agreement.

d. **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, DOL, etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit Plaintiffs' right and ability to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Plaintiffs agree that if such an administrative claim is made, they shall not be entitled to recover any individual monetary relief or other individual remedies.

e. **Collective/Class Action Waiver**. If any claim relating to Plaintiffs' employment with Gillmann arising prior to the date of this Agreement is not subject to release, to the extent permitted by law, Plaintiffs waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding under The Fair Labor Standards Act, 29 U.S.C. Sect. 201 *et seq*. based on such a claim in which Gillmann is a party.

7. **Compromise of Disputed Wage Claims.** Plaintiffs and Gillmann have a disagreement concerning whether Gillmann owes Plaintiffs certain compensation. Specifically, Plaintiffs have claimed non-payment of wages and penalties on such wages under the Fair Labor Standards Act. Gillmann denies that any further wages or other payments of any kind are due and owing to Plaintiffs. Plaintiffs and Gillmann acknowledge that numerous factual disputes exist for both of them. To spare the Parties the time and expense of litigation and appeals, the Parties agree the consideration provided in this Agreement includes complete compensation for any and all wages, penalties, or liquidated damages claimed due and owing, and that this Agreement constitutes a compromise settlement of disputed claims.

8. **Confidentiality.** The parties recognize that this agreement will become public record and will be filed with the Court. Despite the availability of this Agreement through the Court's public records, the parties mutually agree that, to the fullest extent permitted by the Court and subject to the exception below, the parties will not disclose this Agreement to any person, agency, institution, company, or other entity. The sole exceptions are as follows: Plaintiffs may make such disclosures as are required by law, including disclosures to taxing agencies, and may disclose the terms of this Agreement to his counsel, tax advisor, spouse, and immediate family, provided that he shall first inform such individuals that the terms are strictly confidential and obtain their assurance that they will not reveal this Agreement or its terms to anyone else except as required by law.

9. **Reinstatement or Reemployment with Gillmann.** Plaintiffs agree that they waive any claim to employment with Gillmann or Gillman, and that those entities have the right under this Agreement not to hire Plaintiffs should they seek employment with Gillmann or Gillman, and to refuse Plaintiffs assignment if they seek employment through Gillmann or Gilman.

Plaintiffs further agree that if they become employed by Gillmann or Gilman or are assigned by any party to work for Gillmann or Gillman, Gillmann and Gillman shall have the right under this Agreement to terminate Plaintiffs' employment or to cancel Plaintiffs' services. Plaintiffs hereby release Gillmann and Gillman from any and all liability and waive any and all claims which could arise from or relate to the rejection or termination of their employment by Gillmann or Gillman.

10. **No Assignment of Claims.** Plaintiffs represent they have not previously assigned or transferred, nor purported to assign or transfer, to any person or entity, any of the Claims, any portion thereof, or any interest in them.

11. **No Reliance on Representations.** The Parties acknowledge that in entering this Agreement, they do not rely and have not relied upon any representation or statement made by any other party, nor by the Parties' agents, representatives or attorneys, with regard to the subject matter, basis, or effect of this Agreement or otherwise, except as expressly stated in this Agreement.

12. **Governing Law.** This Agreement is made and entered into in the Commonwealth of Virginia, and shall in all respects be interpreted, enforced and governed under Virginia law.

13. **Severability.** Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, excluding the general release provisions, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

14. **Integration and Amendment**. This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements or understandings between the Parties. Any modification or amendment to this Agreement must be in writing and

must be signed and dated by all Parties and must explicitly state it is intended to be an amendment to or modification of this Agreement. Any such amendment must also be approved by the Court.

15. **Voluntary Assent.** By signing this Agreement, Plaintiffs represent that no promises or agreements of any kind (other than those expressly made by Gillmann in this Agreement) have been made to or with Plaintiffs by any person or entity whatsoever to cause Plaintiffs to sign this Agreement, and that Plaintiffs fully understands the meaning and intent of this Agreement. Plaintiffs further represent that they have carefully read this Agreement, understand its contents, freely and voluntarily agrees to all of its terms and conditions, and sign the Agreement freely and voluntarily as their own free act.

16. **Binding Agreement.** This Agreement shall be binding upon each party to it and upon each of such party's heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each other party, and to their or its heirs, administrators, representatives, executors, successors, and assigns.

17. **Acknowledgment.** Plaintiffs affirm and agree that they have had an opportunity to consider this Agreement before signing it and to seek advice from their counsel, and they have voluntarily decided to sign this Agreement of their own free will.

18. **Electronic Signatures and Counterparts.** This Agreement may be executed in counterparts, and signatures transmitted by electronic means, including email, facsimile, or other electronic transmission, shall be deemed as original.

19. **Ending of Per Diem Pay Practice**. By signing this Agreement, Gillmann represents that it has ceased the overtime pay practice complained of in the Complaint.

20. **Revoke Prior Agreement.** This Agreement revokes and supersedes any prior settlement agreements between the parties.

**PLAINTIFFS ARE ADVISED THAT BY SIGNING THIS AGREEMENT THEY WAIVE IMPORTANT RIGHTS, INCLUDING THE RIGHT TO FILE CERTAIN CLAIMS AGAINST THE COMPANY, GENERAL RELEASEES, AND COMPLAINT RELEASEES CLAIMING VIOLATIONS OF STATE OR FEDERAL LAW. PLAINTIFFS BEEN ADVISED TO CONSULT WITH AN ATTORNEY OF THEIR OWN CHOOSING ABOUT THE MEANING AND EFFECT OF THIS AGREEMENT BEFORE SIGNING IT.**


The Parties knowingly and voluntarily execute this Agreement on the date(s) set forth below:

| **SEAN HARDEN** | **GILLMANN SERVICES INC.** |
|---|---|
| By: _____ | By: _____/s/ Jeff Mann_____ CEO/President |
| Date: _____ | Date: __7/5/17__ |
| **JAMES RIDLEY** | **DAVID RIDLEY** |
| By: _____ | By: _____ |
| Date: _____ | Date: _____ |
| **MAURICE LAMB** | **BRIAN HARDEN** |
| By: _____ | By: _____ |
| Date: _____ | Date: _____ |

8